FILED
IN OPEN COURT
JUN 17 2022
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES W. JONES, | ) | CRIMINAL NO. 2:22-cr-66 |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

By signing below, the parties stipulate that the allegations in the Criminal Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt, by competent and admissible evidence.

### Background Information

Unless otherwise stated, at all times relevant to the charge outlined in the Criminal Information:

1. CHARLES W. JONES, the defendant, was employed as a Supervisory Construction Control Representative with the United States General Services Administration (GSA), an agency of the United States Government ("the government"), in Richmond, Virginia. In the government contracting context, JONES was a Contracting Officer's Representative and had authority to evaluate proposals, make recommendations, and supervise and influence the contracting activities of other GSA employees. As part of his official GSA duties, JONES had responsibility for the management and oversight of construction and renovation projects at certain federal courthouse buildings and other federal buildings throughout the Norfolk,

CWJ
S MJH

Richmond, and Alexandria, Virginia, areas— all of which were within the Eastern District of Virginia. Furthermore, from some time in 2014 until August of 2019, JONES maintained an office in Richmond, Virginia. JONES also managed federal construction, repair, and renovation projects at the United States District Courthouse in Harrisonburg, Virginia, the Federal Executive Institute in Charlottesville, Virginia, and the Toulson Federal Building in Salisbury, Maryland, among others. Due to his position within the federal government, JONES was a "public official" as defined within Title 18, United States Code, Section 201(a)(1).

2. JONES formed two limited liability companies (LLC), which did business as WCN Consulting, LLC (WCN) and CLH CONS (CLH). JONES used these business entities to conceal payments from prime contractors and subcontractors relating to his oversight of government construction projects. These business entities had no employees, no actual business expenses, and performed no legitimate services of any kind. JONES received illicit payments in the form of both cash and business checks relating to GSA-funded construction projects at various Federal facilities including, but not limited to, the following: the Lewis F. Powell United States Courthouse, Richmond, Virginia; the Walter E. Hoffman United States Courthouse, Norfolk, Virginia; and the Owen B. Pickett United States Custom House, Norfolk, Virginia, which were within the Eastern District of Virginia.

3. Subcontracting Firm C (Firm C) is a commercial and residential construction company located in Waynesboro, Virginia. Firm C was a subcontractor on multiple GSA projects to include, but not limited to, the following: the Harrisonburg, Virginia, United States Courthouse; the Toulson Federal Building in Salisbury, Maryland; the Charlottesville, Virginia, United States Courthouse; the Powell United States Courthouse, Richmond, Virginia; the Federal Executive Institute in Charlottesville, Virginia; and multiple Social Security Administration

offices throughout Virginia. Individual "D.C." owned and operated Firm C and was the primary point of contact between Firm C and JONES.

4. Subcontracting Firm B was a subcontractor located in Waynesboro, Virginia. Firm B held subcontracts on multiple GSA projects. D.C. was the primary and sole point of contact between Firm B and Jones. In January of 2016, D.C. left Firm B and started Firm C.

<u>JONES' Receipt of Payments from Firm B and C for Work Directed to Firm B and C</u>

5. In or about 2014, JONES and D.C. entered into an agreement wherein JONES recommended GSA-funded projects to Firm B, via GSA prime contractors[1], in exchange for a portion of a percentage of the profits earned by Firm B from these GSA-funded projects. As part of the agreement, JONES recommended that prime contractors select Firm B as a subcontractor to perform work in fulfillment of a prime contractor's obligations under its contract with the federal government. Such recommendations were outside the scope of his official duties. JONES accepted payments from D.C. to pay JONES through WCN after Firm B was selected and received payment from the prime contractor. From on or about December 2014 until January 2016, D.C. directed payments from Firm B to JONES via kickback payments through WCN which totaled approximately $61,692.00. D.C. directed all such payments from Firm B to JONES.

---

[1] GSA enters into contracts with prime contractors for an established project with a defined "scope of work." The prime contractors select and hire the subcontractors that they intend to use for certain aspects of the overall project. It is outside the scope of the government contracting official's role to recommend particular subcontractors. The government issues payments directly to prime contractors for completed work. The prime contractors are responsible for managing and paying their subcontractors.



6. For example, on March 16, 2015, D.C. paid JONES $4,800.00 in exchange for using his official GSA position to recommend Firm B to perform subcontracting work on federal contracts. As part of their illicit quid pro quo agreement, another such payment in the amount of $9,000 was made by D.C. to JONES on January 8, 2016.

7. From on or about December 2015 until August 2019, in the Eastern District of Virginia and elsewhere, the defendant, CHARLES W. JONES, as a public official, directly and indirectly corruptly, sought, received, and accepted something of value personally, in return for being induced to do an act in violation of his official duties; that is, accepting monetary payments from D.C. to recommend the use of Firm C to perform subcontracting work on a government contract.

8. In early January 2016, D.C. stopped doing business through Firm B and began conducting business through Firm C. D.C. and his spouse independently owned and operated Firm C. Between January 2016 and October 2019, Firm C received payments from the United States Government, via GSA prime contractors, of approximately $4.6 million for construction work performed on GSA projects. Prior to forming this illegal relationship with JONES, D.C. had never submitted bids on subcontract work on United States Government construction projects on his own.

9. Beginning in approximately late December 2015, and continuing until approximately August 2019, JONES created false and fictitious remittance invoices in the names of WCN and CLH. JONES provided these false invoices to D.C. for services purportedly performed by WCN and CLH related to the aforementioned GSA-funded projects when, in fact,



no such work was performed by either WCN or CLH. In turn, D.C. through Firm C issued business checks to WCN and CLH that totaled $349,500.00.

10. On May 2, 2016, Firm C paid JONES $8,000.00 in exchange for using his official position to influence the award of government contracts to Firm C. And on May 17, 2017, Firm C paid JONES $6,000.00 in exchange for using his official position to influence the award of government contracts to Firm C.

11. On June 1, 2018, Firm C paid JONES $9,634.00 in exchange for using his official position to influence the award of government contracts to Firm C.

12. On July 1, 2019, Firm C paid JONES $8,000 in exchange for using his official position to influence the award of government contracts to Firm C.

13. These payments would typically be made in the same location at a McDonald's restaurant. During these meetings D.C. and JONES would sit together and JONES would assist D.C. in preparing Requests for Information (RFIs)[2] and review cost estimates Firm C planned to submit through prime contractors to the GSA for potential contracts. During these meetings, JONES, using knowledge obtained through his official position, would adjust Firm C's cost estimates to assist them in being awarded government subcontracts.

14. In order to influence the award of government contracts contacts to Firm C, JONES recommended Firm C to prime contractors conducting business with the GSA including, but not limited to, to Firm T and Firm S. Firm T and Firm S are located in the Eastern District of

---

[2] RFIs are submitted to the government, the general construction contractor, and/or the A&E contractor in order to obtain clarification on a project specification, drawing, or project requirement.



Virginia. JONES made these recommendations as part of the agreement between himself and D.C.

15. Firm T and Firm S utilized Firm C on at least one occasion due to JONES's recommendations. These contracts included contracts for work performed on the Powell Courthouse located in Richmond, Virginia.

16. Firm C received payment from Firm T and Firm S for the work it performed on the Powell Courthouse. When D.C. received payment from these companies, D.C. in turn made payments to JONES in exchange for using his official position to influence the award of these contracts to Firm C.

17. Neither JONES nor his LLCs, WCN and CLH, performed any legitimate work or services relating to these payments directed by D.C. through Firms B and C to JONES. These payments totaled approximately $411,192.00.

18. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.



19. The actions of the defendant, as recounted above, were in all respects knowing deliberate, and intentional, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Matthew J. Heck
Assistant United States Attorney



After consulting with my attorney, I hereby stipulate that the above statement of facts is true and accurate, and that had the matter gone to trial, United States would have proved the same beyond a reasonable doubt.

CHARLES W. JONES
Defendant

I am the attorney for CHARLES W. JONES. I have carefully reviewed the above statement of facts with the defendant. To my knowledge, the defendant's decision to stipulate to these facts is informed and a voluntary one.

Jeff Swartz, Esq.
Counsel for Defendant

